[No. 34169.   Department One.   October 24, 1957.]

LOUISE H. MEYER, *Appellant*, v. LEVY JOHNSON, *Individually and as Administrator, et al., Defendants*, MARTIN GOTTFELD *et al., Respondents.*[1]

[1] Reported in 316 P. (2d) 1090.

*Lynch & Lynch,* for appellant.

*Bigelow & Manier,* for respondents.

WEAVER, J.—May a note and mortgage executed by an administrator, pursuant to statute and approval of the court, result in a deficiency judgment enforcible against other estate assets after sale of the mortgaged premises in foreclosure?

This is an action to quiet title to certain residential property in Olympia. The rights of plaintiff (appellant) and interveners (respondents) accrue from independent transactions resulting from the machinations of one Levy Johnson, a lawyer.

January 31, 1947, Hugh Beaton died intestate. Effie Beaton, his wife and sole heir, qualified as administratrix of his estate. February 12, 1953, Effie Beaton died intestate. Levy Johnson, her son and sole heir, was appointed administrator of her estate and administrator *de bonis non* of the estate of Hugh Beaton. The estates were consolidated.

Among the assets of the estates were the Olympia property and one hundred fifty-nine acres in Grant county lying within the boundaries of the Columbia Basin project.

February 24, 1953, Levy Johnson, *as an individual,* borrowed three thousand dollars from plaintiff. The loan was evidenced by a promissory note, secured by a mortgage on the Olympia property. The mortgage was recorded February 27, 1953.

April 15, 1953, Levy Johnson, still acting *as an individual,* sold the Olympia property to plaintiff for an additional five thousand five hundred dollars in cash. Although he gave her a receipt, no deed was ever issued and no proceedings were had in probate to authorize or approve either the mortgage or the sale.

We turn now to the transaction between Levy Johnson and Mr. and Mrs. Martin Gottfeld, the interveners and respondents in this action.

Prior to October 14, 1953, Levy Johnson negotiated a loan for eight thousand dollars with the interveners, using the Grant county land as security. Interveners knew that the land was within the boundaries of the Columbia Basin project; that it was involved in the Beaton estates; that there were certain unpaid creditors' claims against the estates; and that Johnson was in personal financial difficulties.

October 14, 1953, Johnson, as administrator, presented a petition to the court "for authority to execute mortgage on real estate." The petition discloses unpaid claims against decedents' estates of $1,732.74. It alleges

"  .  .  .  that the purpose of said mortgage is to enable the administrator to pay the above just and valid claims and *to protect the interests of the heir of said estate*." (Italics ours.)

The order of court authorized Johnson, *as administrator*, "to execute a mortgage and note" for eight thousand dollars on the Grant county property in favor of interveners. It also directed that the mortgage and note be signed by Levy Johnson.

The promissory note, delivered to the interveners by Johnson, provides for a deficiency judgment. It is marked "approved" by the trial judge. The recorded mortgage, which makes no reference to a possible deficiency judgment, is "approved as to form and substance."

June 16, 1955, plaintiff commenced her action to quiet title to the Olympia property. July 27, 1955, Mr. and Mrs. Gottfeld served their complaint in intervention, alleging that their mortgage was in default; that they were instituting action to foreclose it; and that any deficiency would be a claim against the other assets of the estate.

All of the named defendants defaulted, and, on December 30, 1955, plaintiff was declared the sole owner of the Olympia property free and clear of any rights

"  .  .  .  save and except as to the unliquidated claim of Martin Gottfeld and Ruby Gottfeld, which the court will hold open for further determination."

There was no appeal from this decree.

June 22, 1956, judgment was entered in Grant county in favor of Mr. and Mrs. Gottfeld against Levy Johnson, individually and as administrator, for $10,530.57. Their mortgage was foreclosed, and they purchased the property at sheriff's sale for $4,924.90, "being reappraised value of prop[erty] described." This left a deficiency judgment of $6,366.38, after adding real estate taxes paid by the Gottfelds.

August 13, 1956, Mr. and Mrs. Gottfeld filed an amended complaint in intervention setting forth their Grant county deficiency judgment and praying that it be declared superior to any claim of plaintiff in the Olympia property.

December 7, 1956, the court established interveners' deficiency judgment as a first lien against plaintiff's Olympia property. It is from this decree that plaintiff appeals.

Although we deem it irrelevant, it adds to an understanding of the facts to point out that the amount bid at the sheriff's sale is the "ceiling price" permitted under the Columbia Basin project act (16 U.S.C. 1952 ed. § 835 et seq.), if the land is to be eligible to receive water for irrigation. Likewise, we deem it immaterial whether interveners had actual knowledge of the "ceiling price." Anyone dealing with real property lying within the project does so subject to existing statutes and regulations made pursuant thereto. However, it appears in the record (although the court made no finding) that Mrs. Gottfeld owned one hundred sixty acres of land lying within ten miles of the Beaton property in Grant county.

Thus, we come to the question posed in the first paragraph of this opinion.

In *Sandberg v. Denman*, 174 Wash. 142, 24 P. (2d) 452 (1933), and cases cited, this court held that an administrator of an estate has no inherent authority to borrow money or impose any liability upon the estate by making, drawing, accepting, or endorsing any bill or promissory note. Further, in *Larson v. Duclos*, 46 Wn. (2d) 334, 338, 281 P. (2d) 458 (1955), this court held that an administrator, merely as a result of his appointment and qualification as such,

has no inherent power to enter into a contract which would render the assets of his trust subject to liens. "Such a power, if it exists, must be found in the statutes."

■ Thus, we are confined to an interpretation of the statutes that authorize an administrator, under certain conditions, *to mortgage* assets of the estate.

RCW 11.56.030 (Rem. Rev. Stat. (Sup.), § 1494) provides as follows:

"Whenever it shall appear to the satisfaction of the court that any portion or all of the real property should be sold or mortgaged for the purpose of raising money to pay the debts and obligations of the estate, and the expenses of administration, inheritance tax or for the support of the family, *or for such other purposes as the court may deem right and proper*, the court may order the sale or mortgage of such portion of the property as appears to the court necessary for the purpose aforesaid." (Italics ours.) (The balance of the section is not germane to the problem before us.)

■ It must be noted that the statute authorizes the administrator to *raise money* only by sale or mortgage of specifically designated real property of the estate. The mortgage may be made to accomplish only the purposes set forth in the statute. We find no provision in our probate code which authorizes an administrator *to borrow money and pledge the general credit of the estate*. (Although it is not necessary to our decision in this case, we would be remiss if we did not indicate that our credulity reaches the breaking point when, under the phrase "or for such other purposes as the court may deem right and proper," an eight thousand dollar mortgage is authorized to pay $1,732.74 of estate debts, with the balance "to protect the interests of the heir of said estate.")

RCW 11.56.040 (Rem. Rev. Stat., § 1495) provides as follows:

"If the court should determine that it is necessary or proper, for any of the said purposes, to mortgage any or all of said property, it may make an order directing the executor or administrator to mortgage such thereof as it may determine upon, and such order shall contain the terms and conditions of such transaction and authorize the

executor ·or administrator to execute and deliver his note or notes and secure the same by mortgage, and thereafter it shall be the duty of such executor or administrator to comply with such order. The executor or administrator shall not deliver any such note, mortgage or other evidence of indebtedness until he has first presented same to the court and obtained its approval of the form. Every mortgage so made and approved shall be effectual to mortgage and encumber all the right, title and interest of the said estate in the property described therein at the time of the death of the said decedent, or acquired by his estate, and no irregularity in the proceedings shall impair or invalidate any mortgage given under such order of the court and approved by it."

We have no quarrel with the contention that a mortgage contemplates the existence of a debt that may be represented by a promissory note. If, however, a promissory note, signed by an administrator, is to bind the general credit of the estate so that a deficiency judgment may become a lien on other assets of the estate, that authority must be found in the statutes quoted *supra*. We do not find it.

The precise question we are considering was presented to the supreme court of Nebraska in *Columbus Land, Loan & Bldg. Ass'n v. Wolken*, 146 Neb. 684, 692, 21 N. W. (2d) 418, 165 A. L. R. 1285 (1946). The court concluded:

"The executor, acting under the license granted him, executed the note and mortgage upon which it is sought to recover a deficiency judgment. From an analysis of the powers conferred upon the court, or a judge thereof, by the statute it is apparent that such license could furnish no authority for the executor to execute a note upon which he is liable and thereby obligate all other assets of the estate which he represented. Therefore, the owner or holder of such obligation, being limited in his rights to the authority which the executor had by reason of the license granted to him, *must, when he seeks to enforce it, look solely to the property mortgaged for the satisfaction thereof*." (Italics ours.)

A mortgage, of the character held by interveners, is essentially different and decidedly less favorable to the mortgagee than is the ordinary mortgage. The point of

differentiation is that there is no possibility of a deficiency judgment against anyone, unless, as here, the executor, who is the sole heir, signs the note and mortgage in his *individual* capacity. See *Fast v. Steele*, 127 Cal. 202, 204, 59 Pac. 585 (1899).

█ This conclusion does not affect the deficiency judgment of interveners against Levy Johnson, individually, since he signed the promissory note in that capacity, as well as administrator of the estate. As between the plaintiff and the interveners, however, the deficiency judgment against Levy Johnson, individually, did not become a lien against the Olympia property. Plaintiff's right thereto came into being before interveners secured the deficiency judgment against Mr. Johnson, individually.

The judgment is reversed, with instructions to dismiss the amended complaint in intervention.

MALLERY, FINLEY, ROSELLINI, and OTT, JJ., concur.

———————

December 17, 1957. Petition for rehearing denied.